UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYTEE PRODUCTS, INC, a California Corporation,<br><br>         Plaintiff,<br>v.<br><br>SHOP VAC CORPORATION; and Does 1 through 100,<br><br>         Defendants. | Case No. 13cv1610 BTM (BGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

  Plaintiff Mytee Products, Inc. ("Plaintiff" or "MPI") has moved for a preliminary injunction against Defendant Shop Vac Corporation ("Defendant" or "Shop Vac"). (ECF No. 7). For the reasons below, Plaintiff's motion is hereby **DENIED**.

## BACKGROUND

  Plaintiff manufactures, markets, and sells commercial cleaning machines, including extractors, sprayers, spotters, polishers, and scrubbers. (LaBarbera Decl. ¶¶ 2-3). Since 1998, it has also sold "air movers" – "fans generally used to dry out wet or flooded environments." (LaBarbera Decl. ¶ 7). Most MPI products, including its air movers, are sold under the company's federally registered trademark "MYTEE." (LaBarbera Decl. ¶¶ 4, 7). Plaintiff's trademark registrations indicate that it used a plain text "MYTEE" mark in commerce as early as 1993 on "machines for hard

surface and carpet cleaning" and "portable hot water heater and heat exchanger elements." (Plaintiff's Exhibits A-B). In 2007, MPI began using a modified "MYTEE" mark with a stylized "M" above the letters suggestive of a mountain. (Plaintiff's Exhibit C). The new mark was registered for "machines for hard surface and carpet cleaning," and "electric fans for drying carpets and wet areas."

MPI alleges that in June, 2013, it discovered that Defendant was selling air movers under the name "MIGHTYmini" and that it intends to sell air movers under the name "MIGHTY MICRO." (LaBarbera Decl. ¶ 10; Seccof Decl. ¶ 3; Plaintiff's Exhibits D, H, M). Plaintiff contends that Shop Vac has infringed on its trademark and seeks a preliminary injunction prohibiting Shop Vac from using the "MIGHTYmini," "MIGHTY MICRO," and "MIGHTYmicro" names in connection with the sale of their air movers and related equipment and prohibiting Shop Vac and its distributors from selling or marketing air movers bearing such marks.

## LEGAL STANDARD

### A. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy" and is "never awarded as of right." Winter v. NDRC, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A preliminary injunction will only be granted "upon a clear showing that the plaintiff is entitled to such relief." Id. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, the plaintiff must establish four elements: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." Id. at 20 (citations omitted). The requirement that irreparable harm be likely is significant; a mere possibility of harm will not suffice. Id. at 22.

The Ninth Circuit Court of Appeals applied Winter in the copyright infringement context in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d

989 (9th Cir. 2011). The court held that Winter abrogated the Circuit's prior case law, which had allowed a presumption of irreparable harm if the plaintiff was able to show a likelihood of success on the merits. Id. at 997 ("If our past standard, which required a plaintiff to demonstrate at least a possibility of irreparable harm, is 'too lenient,' then surely a standard which presumes irreparable harm without requiring any showing at all is also 'too lenient.'"); See, e.g., El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1038 (9th Cir. 2003) ("In a trademark infringement claim, irreparable injury may be presumed from a showing of likelihood of success on the merits." (internal quotation marks and citations omitted)).

Notably, the court in Flexible Lifeline disregarded its prior opinion in Marlyn Nutraceuticals, "an analogous trademark infringement case" where the court had affirmed application of an irreparable harm presumption without considering the effect of Winter. Flexible Lifeline Sys., Inc., 654 F.3d at 997 (criticizing Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873 (9th Cir. 2009)). The Flexible Lifeline court concluded that "even in a copyright infringement case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief." Flexible Lifeline Sys., 654 F.3d at 998.

At least two district courts in this Circuit have applied the same reasoning to applications for preliminary injunctions in trademark infringement claims. See ConocoPhillips Co. v. Gonzalez, 2012 WL 538266, at *2, 2012 U.S. Dist. LEXIS 20972, at *6 (N.D. Cal. Feb. 17, 2012) ("[A] plaintiff is no longer entitled to a presumption of irreparable harm on the ground that it has shown a likelihood of success on the merits."); Leatherman Tool Group, Inc. v. Coast Cutlery Co., 823 F. Supp. 2d 1150, 1157 (D. Or. 2011) ("While the holding in Flexible Lifeline applied to copyright infringement cases, there is no language in the court's rationale that would indicate a different standard for other types of cases.").

This Court agrees. In the wake of Winter and Flexible Lifeline there is no

3

presumption of irreparable harm; a plaintiff seeking a preliminary injunction in the trademark infringement context must demonstrate sufficient facts to establish a likelihood of irreparable harm. See Winter, 555 U.S. at 22; Flexible Lifeline Sys., 654 F.3d at 997-98.

### B. Trademark Infringement

A trademark is "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods." 15 U.S.C. § 1127. "To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" Network Automation, Inc. v. Adv. Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1124 (9th Cir. 2006)).

#### i. Protectible Ownership Interest

Ownership interests in a trademark accrue to the first party to actually use the mark in commerce. See Sengoku Works LTD v. RMS Int'll, LTD, 96 F.3d 1217, 1219 (9th Cir. 1996) (citing J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 16.03 (3d ed. 1996)). A plaintiff's federal registration of a trademark is prima facie evidence of an ownership interest, but a defendant may rebut the presumption by proving their own prior use of the mark in commerce. See Dep't of Parks & Recreation, 448 F.3d at 1124; 15 U.S.C. §§ 1057(b), 1115(a).

#### ii. Likelihood of Consumer Confusion

The Ninth Circuit employs a flexible multi-factor test to gauge the likelihood of confusion caused by an allegedly infringing mark. See Network Automation, Inc., 638 F.3d at 1145. Normally, eight different factors are considered: "similarity of the conflicting designations; relatedness or proximity of the two companies' products or

4

services; strength of [the plaintiff's] mark; marketing channels used; degree of care likely to be exercised by purchasers in selecting goods; [the defendant's] intent in selecting its mark; evidence of actual confusion; and likelihood of expansion in product lines." Brookfield Commc'ns., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1053-54 (9th Cir. 1999) (citations omitted); accord AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). However, it is important to note that the list is not exhaustive, that no factors are dispositive, and that the relative importance of each factor will vary from case to case. See Brookfield Commc'ns., Inc., 174 F.3d at 1054.

## DISCUSSION

To obtain a preliminary injunction, Plaintiff must establish that it is likely to prevail on its trademark infringement claim, that it will likely suffer irreparable harm in the absence of a preliminary injunction, that the balance of equities favors the grant of a preliminary injunction, and that the issuance of a preliminary injunction would be consistent with the public interest. See Flexible Lifeline Sys., 654 F.3d at 994. For the reasons discussed below, the Court concludes that Plaintiff has failed to carry its burden and its motion must be denied.

**A. The Likelihood of Plaintiff's Success on the Merits.**

To prevail on its trademark infringement claim, Plaintiff must show, first, that it has a protectible ownership interest in the "MYTEE" mark and, second, that Defendant's use of the "MIGHTYmini" and "MIGHTY MACRO" marks are likely to cause consumer confusion. See Network Automation, Inc., 638 F.3d at 1144.

**i. MYTEE is a Protectible Mark.**

Plaintiff began selling air movers as early as 1998. (LaBarbera Decl. ¶ 7; Pepper Decl. ¶ 5). Plaintiff's trademark registrations indicate that it used a plain text "MYTEE" mark in commerce as early as 1993 on "machines for hard surface and

5

carpet cleaning" and, in 2007, began using in commerce the "MYTEE" mark with a stylized "M" on "electric fans for drying carpets and wet areas." (Plaintiff's Exhibits A-C). Plaintiff's air movers sold between 1998 to 2007 appear to have been marketed under the plain text "MYTEE" mark. (LaBarbera Decl. ¶ 7). From 2007 onward, Plaintiff's air movers appear to have borne its more recent stylized mark. (Plaintiff's Exhibit C).

Defendant does not claim to have any interest in the "MYTEE" mark; rather, Defendant asserts that Plaintiff has no interest in the trademark "MIGHTY." But this argument is irrelevant to the question at issue. Plaintiff does not need to establish an ownership interest in the allegedly infringing mark. Rather, Plaintiff must establish an ownership interest in its own mark and then show that Defendant's mark is so similar as to be confusing.

The Court concludes that Plaintiff has adequately established that it has a protectible ownership interest in both its original plain text mark and its more recent stylized mark, and that the use in commerce of both marks on air movers predates Defendant's entry into the air mover market in 2010. (Tempesco Decl. ¶ 19).

### ii. Defendant's Use of the "MIGHTYmini" and "MIGHTY MICRO" Marks are Unlikely to Cause Consumer Confusion.

Plaintiff must show that Defendant's "MIGHTYmini" and "MIGHTY MICRO" marks are so similar to Plaintiff's "MYTEE" mark that use of the marks will cause confusion for consumers. See Network Automation, Inc., 638 F.3d at 1144. The Court looks to the Sleekcraft factors to gauge the likelihood of confusion. See Sleekcraft Boats, 599 F.2d at 348-49.

#### 1. Similarity of the Marks

"[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." Brookfield Commc'ns., Inc., 174 F.3d at

6

1054-55. Moreover, "similarities are weighed more heavily than differences." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000), abrogated on other grounds by Winter, 555 U.S. at 22.

The parties' marks do share some common attributes. "MYTEE" and "MIGHTY" are pronounced in a similar fashion. Both words begin with an "M" and contain a "y" and a "t." "MYTEE" contains five letters, while "MIGHTY" contains six letters. To the average listener or observer both marks will normally be interpreted to mean that the air movers are mighty, powerful, or strong. This is particularly true when the "MYTEE" mark is depicted with a stylized M over the lettering, suggesting the outline of a mountain.

Despite these similarities, there are important differences in the marks. Defendant's mark is written in a different font and lacks the stylized mountain design over the letters. Moreover, while Plaintiff's "MYTEE" mark stands alone, Defendant's "MIGHTYmini" and "MIGHTY MICRO" marks contain an additional word that plays on the meaning of the word "mighty" by juxtaposition. Strong or powerful objects are not often thought of as being small. See Estate of Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail."). Finally, Defendant represents that it always appends the words "by SHOP • VAC" to its marks at issue. (Tempesco Decl. ¶ 19). Indeed, Plaintiff's exhibits depicting Defendant's air movers appear to prominently feature the Shop Vac name. (Plaintiff's Exhibits M, P, Q).

**2. Relatedness or Proximity of the Products**

Both Plaintiff and Defendant are selling air movers with visually similar designs that serve similar purposes. The products are thus highly related.

7

### 3. Strength of Plaintiff's Mark

At the preliminary injunction stage, a mark's strength is normally gauged by its conceptual strength. Network Automation, Inc., 638 F.3d at 1149-50. "[C]onceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." Id. at 1149. Marks are often ranked "along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." Id.

The "MYTEE" mark is similar in appearance and sound to the word "mighty," and thus evocative of that word's meaning. In this sense, the "MYTEE" mark is at least suggestive, because it implies that the marked product is powerful and thus "requires a mental leap from the mark to the product," Brookfield Commc'ns., Inc., 174 F.3d at 1058. Moreover, the Court is unable to locate the word "MYTEE" in any English dictionary. The word appears to be entirely artificial. The mark could thus be considered fanciful. See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., 618 F.3d 1025, 1033 (9th Cir. 2010) ("fanciful marks--made-up words with no discernable meaning--such as Kodak film and Sony electronics . . . are inherently distinctive and therefore receive maximum trademark protection." (internal quotation marks and citations omitted)). The Court concludes that "MYTEE" is a strong mark.

### 4. Marketing Channels Used by the Parties

Both Plaintiff and Defendant sell their air movers online. There is some overlap with listings for both parties' air movers appearing on Amazon.com, Ebay.com, AirMovers.com, and LanesCarProducts.com. However, only a small fraction of Defendant's products are sold online. (Tempseco Decl. ¶ 4). Marketing channel overlap on the Internet is generally only regarded as posing a risk of confusion for consumers when "both parties use the Web as a *substantial* marketing and advertising channel." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1151

(9th Cir. 2002).

However, both parties appear to also market their goods offline at trade shows and in stores. (Tempesco Decl. ¶¶ 3-6; LaBarbera's Decl. ¶ 5). On this record, the parties appear to share some marketing channels, but the extent of overlap is unclear.

### 5. Degree of Care Used by Consumers

"We expect [reasonably prudent consumers] to be more discerning - and less easily confused - when [they are] purchasing expensive items." Brookfield Commc'ns., Inc., 174 F.3d at 1060. Plaintiff's air movers appear to be priced at $199-$299 (Plaintiff's Exhibits E, F, G) and Defendant's air movers have a suggested retail price of $69.99 - $79.99. (Tempesco Decl. ¶ 20). At these prices, the Court believes that the reasonably prudent consumer would exercise a high degree of care before making a purchase. See, e.g., Cairns v. Franklin Mint Co., 107 F. Supp. 2d 1212, 1217-18 (C.D. Cal. 2000) (price of $29.95 to $595.00 supported finding that consumers would exercise care); Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc., 2013 WL 655314, at *7-8, 2013 U.S. Dist. LEXIS 24824, at *20-21 (C.D. Cal. Feb. 21, 2013) (price of $99 to $139 supported finding that consumers would exercise care); Tommy Bahama Group, Inc. v. Sexton, 2009 WL 4673863, at *10, 2009 U.S. Dist. LEXIS 112452, at *28-29 (N.D. Cal. Dec. 3, 2009) (price of $64.99 and $84.00 supported finding that consumers would exercise care).

### 6. Defendant's Intent in Selecting its Mark

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993). In this case, the marks are not so similar as to warrant this presumption.

Additionally, Plaintiff argues that Defendant likely knew of the "MYTEE" mark because both parties attended the same trade show. Plaintiff also alleges that

9

Defendant's 2012 registration of its "MIGHTYmini" mark for "power operated blowers," deliberately avoided use of the term "air mover" so as to avoid association with Plaintiff's trademarks during USPTO review. Both of these arguments are speculative and unsubstantiated. The Court finds no credible evidence that Defendant intended to infringe on Plaintiff's trademarks.

### 7. Evidence of Actual Confusion

There is no evidence of any consumer being confused about the source of MPI's and Shop Vac's air movers. Moreover, years have passed since the introduction of Shop Vac's "MIGHTY mini" air movers, rebutting the argument that insufficient time has passed for confusion to manifest. See Oreck Corp. v. U.S. Floor Systems, 803 F.2d 166, 173 (5th Cir. 1986) (noting that seventeen months of concurrent use with no evidence of actual confusion was "highly significant.").

### 8. Likelihood of Expansion in Product Lines

"The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent." Brookfield Commc'ns., Inc., 174 F.3d at 1060. The parties are presently in direct competition in the air mover market. Additionally, there is no evidence in the record suggesting that the parties intend to further expand into each other's product lines.

Having considered each of the Sleekcraft factors, the Court concludes that Plaintiff has not clearly established a likelihood of consumer confusion. The marks are sufficiently distinct, the reasonably prudent consumer can be expected to exercise care in the purchase of an air mover, and there is no credible evidence of either intent to deceive the public or that actual confusion has resulted. Absent a probability of consumer confusion, Plaintiff cannot show a likelihood of success on the merits of its trademark infringement claim and thus its motion for a preliminary injunction must fail. However, for the sake of completeness, the Court will briefly consider the remaining requirements to obtain a preliminary injunction.

### B. The Likelihood Plaintiff will Suffer Irreparable Harm

A plaintiff seeking a preliminary injunction in the trademark infringement context must show sufficient facts to establish a likelihood of irreparable harm. See Flexible Lifeline Sys., 654 F.3d at 997-98. A mere possibility of irreparable harm will not suffice, and even a likelihood of success on the merits will not entitle a plaintiff to a presumption of irreparable harm. See id.; Winter, 555 U.S. at 20-22. Moreover, the alleged harm must be more than speculative. See Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (citing Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984)). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." Id. (citing Los Angeles Memorial Coliseum Comm. v. National Football League, 634 F.2d 1197, 1201 (9th Cir. 1980)).

In this case, Plaintiff has merely alleged that it has invested resources in developing its brand and that Defendant's use of the "MIGHTYmini" mark is denying it the benefit of its investment. Plaintiff has not shown sufficient facts to meet its burden of proof and, in particular, Plaintiff has failed to establish that Defendant is causing irreparable harm that cannot be cured by money damages.

### C. The Balance of Equities

Even when a plaintiff seeking a preliminary injunction has established a likelihood of success on the merits and irreparable harm, the plaintiff must still show "that the balance of equities tips in his favor." Winter, 555 U.S. at 20. In this case, the grant of a preliminary injunction would be inequitable. Plaintiff has failed to establish a likelihood of success on the merits and irreparable harm. Balanced against Plaintiff's interests are the considerable costs, both monetary and reputational, that Defendant would face if forced to recall its air mover product line. The Court finds that the balance of equities disfavors the grant of a preliminary

injunction.

**D. <u>The Public Interest</u>**

Finally, to obtain a preliminary injunction, a plaintiff must establish that the grant of such an extraordinary remedy is in the public interest. <u>Id</u>. In this case, Plaintiff is effectively attempting to control the commercial use of the word "mighty" through its visual and spoken similarity to the "MYTEE" mark. However, the public has a compelling interest in preventing the monopolization of common adjectives that can be used to describe a wide range of products. In <u>Estate of Beckwith, Inc.</u>, 252 U.S. at 543-44, the Supreme Court noted that

> the function of a trade-mark is to point distinctively, either by its own meaning or by association, to the origin or ownership of the wares to which it is applied, and words merely descriptive of qualities, ingredients or characteristics, when used alone, do not do this. Other like goods, equal to them in all respects, may be manufactured or dealt in by others, who, with equal truth, may use, and must be left free to use, the same language of description in placing their goods before the public.

This interest is incorporated into our system for evaluating the strength of trademarks, which recognizes that generic or descriptive words are generally weak trademarks. <u>See</u> <u>Network Automation, Inc.</u> 638 F.3d at 1149. A trademark holder can partially evade this rule by adopting as its mark a word that is sufficiently artificial to enjoy a high degree of conceptual strength, but which is also sufficiently similar to a common descriptor, such that the mark will instantly evoke the common word and its meaning. But the trademark holder cannot, consistent with public policy, enjoin all use of that common word in its competitor's trademarks. The marketing of goods, from both the seller's and buyer's perspective, requires a shared and freely available language to enable communication and description. <u>See</u> <u>Door Sys., Inc. v. Pro-Line Door Sys., Inc.</u>, 83 F.3d 169, 170-171 (7th Cir. 1996) ("If a generic word could be trademarked . . . the producer who trademarked it would have a competitive advantage . . . . Competitors would have difficulty informing consumers that they

*were* competitors, because they would be unable, without elaborate and possibly confusing paraphrase, to give the name of the product they were selling."). The same reasoning that forbids a producer from monopolizing a generic word is equally applicable to common descriptive words like "mighty." In this case, the grant of a preliminary injunction would remove the common word "mighty" from the air mover market for MPI's competitors, and would thus be inconsistent with the public interest.

## **CONCLUSION**

For the reasons above, the Court **DENIES** Plaintiff's motion for a preliminary injunction against Defendant.

IT IS SO ORDERED.

DATED:  November 4, 2013

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court